

Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 00 C 6659 | DATE | 08/03/2001 |
| CASE TITLE | | Cullen v. Cullen | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

Appeal from the Bankruptcy Court (1-1)

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing [held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference [held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial [set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs [by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the attached reasons, the Court AFFIRMS the judgment of the Bankruptcy Court.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | | number of notices |
| | Notices mailed by judge's staff. | | AUG 06 2001 date docketed |
| | Notified counsel by telephone. | | |
| ✓ | Docketing to mail notices. | | docketing deputy initials |
| ✓ | Mail AO 450 form. Bankruptcy | FILED FOR DOCKETING 01 AUG -5 AM 1:51 | 15 |
| ✓ | Copy to judge/magistrate judge Ginsburg | | date mailed notice |
| | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JUDITH CULLEN<br>    Plaintiff-Appellee, | ) ) ) | CASE NO. 00 C 6659 |
| v. | ) ) | JUDGE WILLIAM J. HIBBLER |
| JAMES CULLEN<br>    Defendant-Appellant. | ) ) ) | |

DOCKETED
AUG 0 6 2001

## MEMORANDUM AND ORDER

These matters come before the Court on appeal from the federal Bankruptcy Court. That court held Judith Cullen ("Appellee") had a vested interest in James P. Cullen's ("Appellant") pension plan ("Pension") and, consequently, Appellant could not discharge Appellee's interest in the Pension pursuant to a Chapter 7 bankruptcy proceeding. Appellant now appeals and contends: (1) the court erred in finding Appellee's interest was vested; (2) the vesting of an interest in Appellant's pension was prohibited by statute; and (3) Appellee's failure to file an adversary complaint to determine dischargeability time bars her from any action against Appellant.

### FACTS AND PROCEDURAL HISTORY

On August 2, 1992, after twenty years of marriage, the parties divorced and a Judgment of Dissolution of Marriage was entered in the Circuit Court of Cook County, Illinois. The parties reached a settlement in regards to their respective rights in the marital

1

/5

property and the division of that property, including a division of Appellant's Pension (i.e. Policemen's Annuity and Benefit Fund of Chicago). Article V of the Stipulation and Marital Settlement Agreement ("Stipulation") states in relevant part:

> The husband is a participant in the Policemen's Annuity and Benefit Fund of Chicago. The husband's interest in said fund is valued at $281,083.62 and the entire interest is marital property. The parties acknowledge that the Policemen's Annuity and Benefit Fund of Chicago is a municipal pension and under current law is not subject to a "Qualified Domestic Relations Order." It is specifically agreed that a "Qualified Domestic Relation's Order"[1] will be entered if future changes in the law make the Policemen's Annuity and Benefit Fund of Chicago subject to such an order.
>
> At such time as the husband actually begins to receive pension or retirement benefits from the Policemen's Annuity and Benefit fund of Chicago, the husband shall have an affirmative duty to pay 30% of the marital portion of all such benefits received to the wife, and to direct that 30% of the marital portion of any and all benefits to be paid from the plan on account of the husband's death, be paid to the wife. The term "marital portion" means the portion of the husband's interest in the plan acquired by the husband during the marriage. This portion is determined by multiplying any benefit to be paid to or on behalf of the husband by a fraction, the numerator of which is the number of full months from the date of the parities' marriage or the date the husband became a member of the plan, whichever is later, to the date of the Judgment of Dissolution of Marriage, and the denominator of which is the total number of months that the husband is a member of the plan prior to benefits being paid from the plan to the husband. Such payment shall be made by the husband to the wife within five days of receipt of pension or retirement benefits from the Policemen's Annuity and Benefit Fund of Chicago. Except

---

[1] A QDRO is a statutory exception to the anti-alienation provisions required for pensions, which are governed by the Employee Retirement Income Security Act ("ERISA"). 29 U.S.C. sec. 1056(d)(1). Generally, a former spouse must have a QDRO to have an enforceable interest against a spouse's ERISA-qualified pension. *See In re Brown*, 168 B.R. 331, 335 n.6 (Bankr. N.D. Ill. 1994).

2

as otherwise herein set forth, this payment to the wife
is in satisfaction of her full marital interest in the
Policemen's Annuity Benefit Fund of Chicago.

Article IX par.2 states in relevant parts:

Except as otherwise provided herein, each of the parties
hereto does hereby forever relinquish, release, waive,
and quit claim to the other party hereto, all rights of
dower and homestead and all property rights and claims
which he or she now has or may hereafter have, as
husband, wife, widower, widow or otherwise, or by reason
of the marital relation now existing between the parties
hereto or by virtue of any present or future law of the
state, in or to, or against the property of the other
party or his or her estate, whether now owned or
hereafter acquired by such other party…

On August 11, 1998, the Illinois General Assembly passed bill HB 1612, which changed the Illinois Pension Code by adding Section 1-119. 40 ILCS 5/1-119. Accordingly, if one of the parties is a member of a public pension system, a Qualified Domestic Relations Order ("QDRO") can be entered with respect to the pension plan. Prior to this enactment, public pension plans were not subject to the entry of a QDRO.

On November 28, 1995, Appellant, along with his new wife Kathleen Cullen, filed a joint voluntary bankruptcy under Chapter 7. On March 22, 1996, an order discharging the debtors from their dischargeable debts was entered in the bankruptcy case; on April 25, 1996, the case was closed.

Appellant informed Appellee she was not entitled to any Pension benefits because his obligations to her were discharged in the Chapter 7 case. Subsequently, Appellee filed a motion to re-open Appellant's bankruptcy case. On April 28, 1999, Appellee's

3

motion to re-open the bankruptcy case was granted and she proceeded to file a three count complaint giving rise to the instant action. First, Appellee sought a declaratory judgment that she had a vested interest in the share of the Pension awarded to her in the Judgment of Dissolution. Second, Appellee claimed Appellant held her share of the Pension solely as a constructive trustee for her benefit and sought a judgment in the amount of any funds Appellant had retained that belonged to her under the Judgment of Dissolution. Also, she sought an order requiring Appellant in the future to turn over any funds from the Pension Fund due to her under the Judgment of Dissolution. Third, in the alternative, Appellee contended the portion of the Pension Fund awarded to her in the Dissolution Judgment was a "debt" owed to her, and this debt was not dischargeable under Section 523(a)(5) of the Bankruptcy Code. 11 U.S.C. § 523(a)(5).

On October 3, 2000 Judge Ginsburg ruled on the Judgment on the Pleadings. First, he found Appellee held a vested interest in the portion of Appellant's interest in his Pension awarded to Appellee in the Judgment of Dissolution of Marriage entered by the Circuit Court of Cook County on August 2, 1992. Second, Appellee's interest in the Pension Fund did not constitute property of Appellant's bankruptcy estate. Finally, Appellee's vested interest in the portion of the Pension Fund awarded to her in the Dissolution Judgment was not divested or in any way impacted by

4

Appellant's discharge in bankruptcy.[2]

On appeal, Appellant raises the following issues. First, Appellant questions whether the trial court erred when it declared Appellee had a vested interest in Appellant's pension and thus made her interest in his pension her separate property and not property of the estate where; (a) Appellant's pension plan was a municipal pension which strictly prohibited alienation or vesting of any interest in Appellant's pension as a matter of statute and (b) the judgment of dissolution declared Appellant's interest in the pension fund as marital property and created a future affirmative duty on Appellant to pay a portion of the funds he receives from the pension to Appellee at the time he receives the benefits. Second, Appellant asks whether the trial court mistakenly declared Appellant's discharge in bankruptcy did not divest or in any way impact the award of the portion of the marital property interest Appellee received in Appellant's pension plan by virtue of the decree of dissolution, when Appellee failed to timely pursue an adversarial claim under 11 U.S.C. § 523(a)(15). (Appellant Br.at 8-9.)

## ANALYSIS

---

[2] Judge Ginsburg had earlier dismissed Appellee's third count as pleaded in the alternative. (Bankr. Ct. Order of April 12, 2000; *see* Appellant App. Doc. 15 13.) The judge ruled if Appellee did not hold a vested property interest, then the parties intended their agreement concerning the division of the Pension to be a property settlement. Dichargeability of a property settlement is controled by 11 U.S.C. § 523(a)(15), and under that rule Appellee's count in the alternative was time barred. *Id.*

5

## Arguments I, II

The trial court concluded when the Judgment of Dissolution of Marriage was entered, Appellee's right to a portion of the pension fund vested; consequently, Appellee's interest in Appellant's pension was not part of Appellant's bankruptcy estate.

Appellant argues Appellee does not have, nor has ever had, a vested interest in a portion of Appellant's Pension. Rather, he alleges Appellee was awarded a future interest in a right to payment from Appellant and a right to the later entry of a QRDO in satisfaction of her full marital interest in Appellant's Pension. According to Appellant, the trial court ignored the fact Appellee had traded her "full marital interest" for future payments and re-wrote the Stipulation to confer property rights on Appellee that were not agreed on by the Parties. Appellee affirmatively stipulated to a lesser interest than co-ownership in the divorce decree because the Pension, like other assets, could not be alienated. For example, assets such as homes and car, by their nature, cannot be alienated when a couple files for divorce. Under these circumstances, the ownership vests in the spouse to whom the property is distributed. Since the pension fund was distributed to Appellant, he maintains his interest vested but Appellee did not have an interest that could vest. Finally, Appellant contends Illinois statutory law barred such a vested interest.

The question presented of whether or not Appellee's interest

6

in the pension plan is her separate property interest, and therefore, not part of the former husband's bankruptcy estate, is determined by reference to state law. *Barnhill v. Johnson*, 112 S.Ct 1386, 1388 (1992); *Jones v. Atchinson*, 925 F.2d 209, 210 (7th Cir. 1991). Under Illinois law, each spouse holds ownership rights in the marital property which vest at the time dissolution proceeding are commenced. *Carter v. Carter*, No. 95 C 5075, 1996 WL 374127 at *3 (N.D. Ill. 1996); *In re Marriage of Roehn*, 576 N.E.2d 560, 562 (Ill. App. Ct. 1991). The majority view among bankruptcy courts is consistent with Illinois law. *Brown*, 168 B.R. at 333; *In re Potter*, 159 B.R. 672, 674 (Bankr. N.Y. 1993); *In re Long*, 148 B.R. 904 (Bankr. W.D. Mo. 1992). The divorce decree does not create a debtor/creditor relationship between the parties; rather, each spouse becomes an owner of a portion of the pension at the time of entry of the divorce decree. *Id.*

Furthermore, although ownership vests in the spouse to whom such property has been distributed, *Roen*, 576 N.E.2d at 562, the non-debtor's interest in the property does not become property of the estate merely because the debtor spouse has actual possession of the pension plan or payments from the pension plan. *Brown*, 168 B.R. at 335. Under Section 541 of the Bankruptcy Code, the bankruptcy estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). However, Section 541(d) provides:

> Property in which the debtor holds... only legal title and not an equitable interest...becomes property of the estate... only to the extent of the debtor's legal title to such property, but not to the extent if any equitable interest in such property that the debtor does not hold.

11 U.S.C. § 541(d). Thus, the debtor spouse holds property interest in the pension plan of the non-debtor spouse as a constructive trustee for the benefit of the non-debtor spouse. *Id.* Property held in trust does not become part of a bankruptcy estate. 11 U.S.C. § 541(d); *Begier v. Internal Revenue Service,* 496 U.S. 53, 58 (1990).

Here, although the pension was distributed to Appellant, he simply held that portion as a constructive trustee. Appellant, at a minimum, held a bare legal title, but Appellee's interest in 30% of the pension plan was an equitable interest, which vested and became her sole and separate property upon dissolution of the marriage. Therefore, Appellee's property interest never became a part of bankruptcy estate.

As for whether Judith intended to waive her interest in the Pension, the Court fails to see how Article IX's general provision constitutes a waiver of those rights in exchange for future interests in payments benefits and the right to a QDRO. There is a strong presumption in the law against adding provisions that easily could have been included in the contract but were not. *Wright v. Chicago Title Ins. Co.,* 554 N.E.2d 511, 514 (Ill.App. Ct. 1990). Moreover, the actual purpose of the parties is controlling

8

in interpreting the Marital Separation Agreement. *In re Renzulli*, 28 B.R. 41, 43 (Bankr. N.D. Ill. 1982).

The provisions in Article IX, para. 2, of the Stipulation state: "Except as otherwise provided herein, each of the parties hereto does hereby forever relinquish, release, waive ... all right of dower and homestead all property claims... against the property of the other party or his estate." However, Article V provides: "The husband's interest in said fund is valued at $281,083.62, and the entire interest is marital property." Appellant wants the court to ignore the language in Article IX ( "Except as other wise provided") and in Article V, which dictate Appellee was entitled to receive her vested interest in the Pension. If Appellee had intended to waive her right to the pension, this could have been specifically inserted into the Waiver Stipulation or the language including the pension could have been excluded.

Accordingly, the Court concludes Article IX of the Stipulation does not include language sufficient to determine Appellee waived her right to her share in the pension; an interpretation waiving the Appellee's rights would be inconsistent with the plain meaning of the language in Article V. The trial court did not rewrite the contract; rather, the bankruptcy court's ruling is consistent with the language in the Stipulation. Each party held distinct vested interests in the Pension and each waived any claims against the other's vested interest. *Compare Estate of Altobelli v.*

9

*International Business Machines Corp.*, 77 F.3d 78, 80 (4th Cir. 1996)(a waiver provision enumerating the divisible property, which included the pension benefits, was specific enough to constitute a wavier of ex-wife's rights to those benefits) *to In re Renzulli,* 28 B.R. 41, 44 (a waiver provision that did not explicitly waive marital interest to support payments was too general to constitute waiver, where interest was explicitly included in other provision in the Marital Agreement) *and Iron Workers Local 541 Annuity Fund v. O'Brien,* 937 F.Supp. 346, 349(D. Del. 1996)(a waiver provision limited to claims relating to support and maintenance and to claim claims in any divorce proceeding but not explicitly mentioning the pension benefits was too general to constitute waiver of ex-wife's rights to those benefits).

Appellant further argues the applicable statute at the time Appellant filed for bankruptcy prevented alienation and barred Appellee from having a legal co-ownership or vested interest in Appellant's pension. Thus, according to Appellant, the Court should not manufacture an exception for Appellee, where formal vesting is only available through an entry of a QDRO. *See In re Marriage of Norfleet,* 612 N.E.2d 939 (Ill. App. Ct. 1993)

ERISA states that benefits provided under the retirement plan may not be assigned or alienated. 29 U.S.C. § 1056(d)(1). However, there is an exception to the rule. *Brown,* 168 B.R. at 335. Under provisions in ERISA, a QDRO may divide assets in a pension trust

10

between the employee spouse and non-employee spouse pursuant to the dissolution of marriage. *Norfleet*, 612 N.E.2d at 941-42. A QDRO permits a former spouse to enforce preexisting property rights against an ERISA-qualified plan; however, a QDRO does not create or determine the spouse's interest in a pension fund. *Brown*, 168 B.R. at 335. "Under Illinois law, pension benefits are property interests rather then mere expectancies, regardless of whether they are matured, vested, non-vested, contributory, or noncontributory." *In re Marriage of Johnson*, 562 N.E.2d 1004, 1007 (Ill. App. Ct. 1991). Pension rights are correctly interpreted as deferred compensation in the nature of contract rights. *Id.* Thus, the spouse of a participant obtains an actual co-ownership interest in the benefits as marital property, and the timing of the entry of a valid QDRO is irrelevant in the determination of Appellee's rights. *Id; Brown*, 168 B.R. at 335.

Here, the anti-assignment or alienation provision does not bar Appellee's claim as a non-employee spouse to a certain portion of the pension benefits. The entry of a QDRO would not impact or determine if Appellee's interest was vested. The trial court noted correctly that, under the Judgment of Dissolution, Appellant's interest was reduced by 30% and Appellee was awarded a 30% interest in the marital property of Appellant's Pension Fund. Appellant wrongly asserts that absent a QDRO she did not have a vested interest; however, the interest exists independently from the QDRO

and vested upon dissolution of the marriage. The QDRO was entered later and is a mechanism to enforce the pre-existing property right in 30% of the marital property. *See In re Rossi*, No. 98 B 19055, 1999 WL 253124, at *8 (Bankr. N.D. Ill. Apr. 27, 1999); *Gendreau v. Gendreau*, 122 F.3d 815 (9th Cir. 1997). Accordingly, the bankruptcy court's findings on Count I and II are affirmed.

## Argument III

Appellant next argues the trial court erred in rejecting his argument the Stipulation created a debt that could be discharged in his bankruptcy, and, further, that Appellee's failure to timely file an adversary complaint to determine the dischargeability obligation bars her from the relief she seeks.

The bankruptcy code provides for the discharge of all debts that are the personal liability of the debtor and that arose before the debtor filed for bankruptcy under Title 11. 11 U.S.C. § 524, 727(a). Debt is defined as a liability on a claim, and a claim is defined as "a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5), (12). If the pension creates a debt rather than property, the bankruptcy court would have had to determine whether the award was in the nature of alimony, maintenance or support. *Carter*, 1996 WL 374127 at *2. Debts incurred as a result of divorce, including property

12

settlements, are dischargeable except to the extent they represent obligations in the nature of alimony, maintenance, or support. 11 U.S.C. § 523. Bankruptcy, though, recognizes state property rights, and a debtor filing for bankruptcy cannot receive a greater interest in an asset than that which he owned pre-bankruptcy. 11 U.S.C. § 541 (a)(1); see Gendreau, 122 F.3d at 818.

As discussed previously, Appellee's interest in the pension plan was vested at the time of the divorce and therefore is not a dischargeable debt. Appellant's interest was limited at that time, or at least subject to limitation when Appellee received a QDRO. Appellant filed for bankruptcy after the dissolution of the marriage and after Appellee's interest in the pension became her separate property right and not a debt obligation. As such, the Court cannot give Appellant a share of the pension beyond that over which he possesses equitable title.

Finally, the divorce decree does not create a debtor/creditor relationship between the debtor spouse and the non-debtor spouse. Rather, each becomes an owner of a portion of the pension. Appellant is mistaken; Appellee's failure to raise the unnecessary claim within the proper statute of limitations does not effect her property right or effect an otherwise non-dischargeable interest. See 11 U.S.C. § 523(a)(5). Appellee possessed a vested interest, rather than a debt; as such, any statute of limitations issues are without merit.

## Conclusion

For the above reasons, the bankruptcy court's judgment, holding Judith Cullen has a vested interest in James Cullen's pension plan and James Cullen could not discharge Judith Cullen's interest in the pension pursuant to Chapter 7 Bankruptcy proceeding, is AFFIRMED.

**IT IS SO ORDERED.**

DATED: August 3, 2001

*[signature: Wm. J. Hibbler]*

**WILLIAM J. HIBBLER, DISTRICT JUDGE**